Harris, J.,
delivered tbe opinion of tbe Court.
Tbe plaintiff brought this action to recover tbe value of a slave. There are two counts in tbe declaration: one in case and tbe other in trover. Upon tbe plea of not guilty there were verdict and judgment for tbe defendant, a new trial was refused, and tbe plaintiffs appealed in error to this Court.
*350 The proof shows that the negro man of the plaintiffs’ was hired to the defendant for the term of twelve months; that the hiring was general, and that this negro worked with other slaves of the defendant upon his plantation. The negroes usually got lip about daylight, and were employed in feeding the stock until breakfast, then they went to the farm and worked there. After supper they usually worked until 9 or 10 o’clock; some times sacking dried fruit, . peas, &c., and sometimes they ginned and baled cotton; at other times they removed fence, &c. It was defendant’s order for them to work every night, except when it rained or snowed, but to stop work at 9 o’clock. They sometimes, however, work until 10 o’clock, and on two occasions much later, but the slave in_ controversy was not then with them.
The proof also shows that it was not usual for farmers in that neighborhood to work so late as the defendant worked, unless it was in saving fodder or hay, at that business it was customary to work as late as 9 or 10 o’clock at night, and some times later. It was also in proof that the defendant did not live upon his farm; was only there occasionally, once in every two or three weeks; that he was a reasonable and prudent man and a good master. That his overseer “was a kind, prudent man and indulgent to the negroes.” The overseer did not attend the negroes after night. This was usually done by one of the clerks in the store, he worked himself, with the negroes, and did as much as either of them, without injury to himself. On the 15th of September, 1852, the slave in controversy was sent out with others to take up fodder; they were told *351 to bind up tbe fodder and stack it in tbe field; instead of doing so, tbe negro in question and another, concluded to baúl tbe fodder a distance of about 150 yards to tbe barn, in doing wbicb, be accidentally fell from tbe wagon and was so much injured that be died in a few minutes afterwards. Tbis occurred between 9 and 10 o’clock at nigbt, and tbe negro was worth one thousand or twelve hundred dollars. Tbis embraces all the proof in tbe case that is regarded as at all material.
That portion of tbe charge of tbe Court to wbicb exception is taken, is as follows: “ That if tbe jury should find that tbe defendant hired tbe plaintiffs’ slave by a general hiring, be would then have a right to employ him about bis general business, and although they should find that be required tbe slave to labor to an unreasonable extent, and at unusual and unreasonable times, and in a manner' and to an extent that a prudent owner would not require of bis own slaves, even that would not be a conversion. And if they found that was tbe case, and tbe slave came to bis death by bis own act; unconnected with and not produced by tbe over work, then defendant would not be liable to tbe plaintiffs for bis value.” Tbe plaintiffs then requested tbe Court to charge tbe jury, “that if they found from tbe evidence, that tbe defendant employed tbe slave in controversy, either by himself or bis agent, or overseer, in an unreasonable manner, at unreasonable and unseasonable hours, in a manner that a reasonable prudent man would not employ bis own negroes, that it was a conversion, and tbe defendant would be liable for bis value, although tbe negro was afterwards accidently killed.” Tbe Court refused to *352 charge as requested, but said, “that in bis opinion it was not a conversion.”
To the above charge, and also to the Court’s refusing to charge as requested, the plaintiffs except, and upon these alleged errors they rely for a reversal of the judgment. We think there is no error in that part of the charge excepted to, and that it would have been erroneous to have charged as requested.
In the portion of the charge to which there is no exception, and which is not set out in this opinion, the Court erred in favor of the plaintiffs. It is not assumed even in argument, that the defendant put the slave to service different from that authorized by the contract; but the argument is, that the defendant required of the slave- undue and excessive labor, at unreasonable and improper hours, about a service in which, under the contract, he had a right to employ him. This, though highly improper if true, would not amount to a conversion. And so the Court,- correctly, as we think, instructed the jury. When the hirer appropriates the slave to a use entirely different from the one for which he was hired; as if he was hired to work on the farm, and he put him as a hand upon a steamboat, or at a furnace, he thereby assumes an authority wholly unauthorized by the contract, and usurps the character of owner, and is guilty of conversion. But when he exacts from him immoderate service, in an employment authorized by the contract, this does not amount to the assertion of ownership, and of a right distinct and different from that acquired by the contract, and does not, therefore, amount to a conversion.
By the contract of hiring, the hirer is bound to use *353 the thing hired in a moderate 'and prudent manner. If he hire a slave he must not work him unreasonably or immoderately. Should he do so, he will be liable in an action on the case for the damages resulting from his misconduct; but not for a conversion. If the death of the slave in question had resulted from the negligence or misconduct of the defendant at the time it occurred, he being employed at a business authorized by the contract, he would have been liable for the value of the slave IN an action on the CASE, because the injury would have resulted from his own misconduct. Rut if at the time the injury occurred, the defendant was in no fault, though he may have previously worked the slave unreasonably and immoderately, and no injury resulted therefrom, and the slave at the time, being employed at a service authorized by the contract, then, as we think, this action could not be maintained on either count in the declaration. We think, therefore, there is no error in the judgment of the Circuit Court and it is affirmed;